UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHAWN DALE NANEZ,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>KAREN DANIELS ET. AL.,<br><br>　　　　　　　　Defendants. | Case No. C17-5663-RBL-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for **February 22, 2019** |

This matter is before the Court on defendants' motion for summary judgment based on plaintiff's failure to exhaust his administrative remedies.[1] Dkt. 12. Plaintiff has brought suit under 42 U.S.C. § 1983 against defendants for alleged Eighth Amendment violations due to "severe conditions of confinement." Dkt. 3, at 5. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends the Court grant defendants' motion and dismiss plaintiff's complaint without prejudice.

---

[1] Defendants originally filed this motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 12. By order dated August 9, 2018, the Court converted the exhaustion portion of defendants' motion to a motion for summary judgment to be decided first, directed plaintiff to show cause why the matter should not be dismissed for failure to exhaust, and afforded the parties an opportunity to submit additional briefing under the summary judgment standard. Dkt. 30. The order also converted the remaining issues raised in defendants' motion to a motion for summary judgment but suspended decision on the remainder of the motion to be decided, if necessary, after a decision was rendered on the exhaustion issue. *Id.*

REPORT AND RECOMMENDATION - 1

FACTUAL AND PROCEDURAL HISTORY

Plaintiff alleges he is currently an inmate at Monroe Correctional Complex but sues for alleged constitutional violations while he was incarcerated at Pierce County Jail (the Pierce County Detention and Correction Center (PCDCC)). Dkt. 3, at 2. Plaintiff alleges that between September 21, 2014 and June 5, 2015, the defendants "violated my 8th Amendment Constitutional rights to be free of cruel and unusual punishment including; recreation/sanitary living conditions/hygiene/linen." Dkt. 3, at 5, 7-8. Plaintiff further alleges that the "mistreatment caused me to get highly suicidal and cause myself extensive bodily harm[.]" *Id.*, at 6.

Plaintiff more specifically alleges that defendant Marvin Spencer ordered the correctional officers to place me on "no movement" on "several occasions" between September 29, 2014, and December 20, 2014. Dkt. 3, at 5. Plaintiff indicates defendant Martha Karr ordered him to be housed in a booking cell measuring about six feet by seven feet between December 30, 2014, and February 24, 2015. *Id.* He indicates defendant Karr and corrections deputy King only gave him 15 minutes of recreation on January 24, 2015 and that he was in waist and ankle restraints. *Id.*

Plaintiff alleges defendant Judy Snow would not allow him any books/recreation/writing materials/or mattress "on and off" between September 21, 2014, and April 2015. *Id.* He alleges defendant Patti Jackson-Kidder, wouldn't allow him to live in a normal housing unit between December 30, 2014, and February 24, 2015, and then again between April 28, 2015 and June 5, 2015. *Id.* Plaintiff alleges that at some unspecified point during this period he was placed in a small cell for 26 days with nothing which was "complete sensory deprivation", was deprived of "shower privelages [sic], recreation, and a mattress." *Id.*, at 6.

Plaintiff alleges that surgery was performed on December 26, 2014, to remove several foreign bodies he ingested to harm himself. *Id.*, at 6-7. He alleges that when he returned to PCDCC on December 30, 2014, he was only allowed a suicide prevention smock, one suicide

REPORT AND RECOMMENDATION - 2

1 blanket, was forced to sleep on a jail floor with "urine, feces, blood, and other bodily fluids"
2 causing an infection in his abdomen. *Id.* He claims he was only permitted to shower every other
3 day, then every four days, then nine days apart. *Id.* He claims he was told on several occasions
4 by defendant Marvin Spencer that soap, mattress, recreation, toothbrush and toothpaste, toilet
5 paper, showers and grievances were "a privelage" [sic]. *Id.*

6 Finally, plaintiff alleges defendants Martha Karr and Karen Daniels would not allow him
7 a toothbrush or toothpaste for 47 consecutive days between December 30, 2014, and February
8 15, 2015, resulting in several cavities. *Id.*, at 7.

9 Defendants argue in their motion for summary judgment that plaintiff's complaint is
10 barred by 42 U.S.C. § 1997e(a) (the Prison Litigation Reform Act (PLRA)) because he has failed
11 to exhaust his administrative remedies. Dkt. 12. In support of their motion, defendants submitted
12 the following: (1) declarations from the custodian of inmate Kites, grievances, and Observation
13 Reports at PCDCC (Leslie Medved), the custodian of inmate medical and mental health records
14 at PCDCC (Chandra Bundy), and the custodian of risk management records for Pierce County
15 Risk Management (Colby Richards); (2) excerpts from a "Prisoner Information Handbook"
16 describing the PCDCC procedure for filing and appealing prisoner grievances; (3) copies of
17 Kites filed by plaintiff during the period in question; (4) copies of grievances filed by plaintiff
18 during the period in question; (6) copies of legal claims filed by plaintiff with the Pierce County
19 Risk Management Department. *See* Dkts. 14, 15, 16.

20 Plaintiff filed a response to defendants' motion and defendants filed a reply. Dkts. 28, 29.
21 In response to the Court's order converting defendants' motion to one for summary judgment
22 and allowing the parties to submit additional briefing, plaintiff filed an additional response and
23 defendants filed an additional reply. Dkts. 31, 32. While plaintiff did not submit any evidence to

REPORT AND RECOMMENDATION - 3

the Court in his responses, his complaint was signed under penalty of perjury and is being considered as evidence.[2]

For the reasons set forth below, the undersigned recommends that defendants' motion be granted and the complaint be dismissed without prejudice.

## DISCUSSION

Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(c). In deciding whether summary judgment should be granted, the Court "must view the evidence in the light most favorable to the nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a summary judgment motion is supported as provided in FRCP 56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2).

If the nonmoving party does not so respond, summary judgment, if appropriate, shall be rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of

---

[2] Because Plaintiff is *pro se*, the Court "must consider as evidence in his opposition to summary judgment all of [Plaintiff's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [Plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 4

1   a claim or defense and whose existence might affect the outcome of the suit," and the materiality

2   of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809

3   F.2d at 630.

4       Mere "[d]isputes over irrelevant or unnecessary facts," therefore, "will not preclude a

5   grant of summary judgment." *Id.* Rather, the nonmoving party "must produce at least some

6   'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477

7   U.S. at 290). "No longer can it be argued that any disagreement about a material issue of fact

8   precludes the use of summary judgment." *California Architectural Building Prods., Inc.*, 818

9   F.2d at 1468. In other words, the purpose of summary judgment "is not to replace conclusory

10  allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l*

11  *Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

12      Prisoners cannot bring claims under 42 U.S.C. § 1983, unless "such administrative

13  remedies as are available are exhausted." 42 U.S.C. § 1997e(a). However, failure to exhaust

14  administrative remedies is "an affirmative defense the defendant must plead and prove." *Jones v.*

15  *Bock*, 549 U.S. 199, 204, 216 (2007). Accordingly, the "appropriate device" for deciding

16  exhaustion "is a motion for summary judgment under Rule 56." *Albino v. Baca*, 747 F.3d 1162,

17  1168 (9th Cir. 2014) (en banc). Exhaustion "should be decided, if feasible, before reaching the

18  merits of a prisoner's claim." *Id.*, at 1170.

19      The mere fact a plaintiff has filed an initial grievance under a prison's grievance policy

20  does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an

21  available grievance procedure before he can initiate litigation. *See id.* at 736-41; *Porter v. Nussle*,

22  534 U.S. 516, 524-25 (2002). Even when the prisoner seeks relief not available in grievance

23  proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at

24

25

REPORT AND RECOMMENDATION - 5

741. If a claim is not exhausted, it must be dismissed. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

It is a defendant's burden to prove both that an administrative remedy was available and that the prisoner failed to exhaust it. *Albino*, 747 F.3d at 1172. If that burden is carried, it is then the prisoner's burden "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. However, the ultimate burden remains on defendants. *Id*. Defendants must prove non-exhaustion of administrative remedies by a preponderance of the evidence. *See Lopez v. Swift*, 2013 WL 4718972, at *3 (E.D. Wa., Sept. 3, 2013); *Andrews v. Whitman*, 2009 WL 857604, at * (S.D. Cal., Mar. 27, 2009); *Kelley v. DeMasi,* 2008 WL 4298475, at *4 (E.D. Mich., Sept. 18, 2008) (citing *Lewis v. District of Columbia,* 535 F.Supp.2d 1, 5 (D.D.C.2008)); *See also Dale v. Poston,* 548 F.3d 563, 564 (7th Cir. 2008) (noting with approval that jury was asked to determine whether defendants in PLRA case had proven non-exhaustion by a preponderance of the evidence).

Here, it is undisputed that plaintiff has not filed any grievances concerning the facts related to his complaint. Dkt. 3, at 2. Plaintiff's complaint asserts that while he was at PCDCC he was "not allowed writing material nor allowed a grievance[.]" *Id.* However, plaintiff's complaint later states that the lack of writing materials was only "on and off between 9/21/14-April 2015." *Id.*, at 4.

Defendants present evidence of the procedure in place for filing and appealing prisoner grievances at PCDCC. Dkt. 16, at 1, 5-6. Pursuant to this procedure an inmate shall first present a complaint/issue informally with staff, if not resolved, the prisoner is to submit a Kite to the appropriate supervisor within 10 days of the date the issue of concern occurred. *Id.* The

1  supervisor will then respond within 10 working days. *Id.* If not resolved, the inmate may then

2  grieve the response on a grievance form within 25 days from the date of the original

3  request/Kite. *Id.* The supervisor will then respond within 10 working days. *Id.* If not resolved, an

4  inmate may then appeal the grievance response within 20 calendar days from the date the

5  responder signed the grievance form. *Id.* The supervisor of the responder will then respond

6  within 10 working days of the appeal receipt. *Id.*

7        Defendants' evidence further shows that during the period in question (September 21,

8  2014 to June 5, 2015) plaintiff was able to file at least 31 regular Kites, 34 medical Kites, three

9  grievances, and two legal claims with Pierce County's Risk Management Department filed

10 throughout this period. Dkt. 14, 15, 16. Specifically, there is evidence of such filings in

11 November and December 2014, as well as February, March, April and May of 2015. Dkts. 14,

12 15, 16. Defendants also present evidence that none of the three grievances filed during the period

13 in question (dated December 8, 2014, December 8, 2014, and February 21, 2015) related to the

14 claims asserted in plaintiff's complaint, nor were any of those grievances appealed. Dkt. 16, at 2,

15 14-25.

16       Defendants acknowledge that plaintiff was not permitted unsupervised access to writing

17 materials at all times during the period in question due to concerns about self-harm.[3] Dkt. 12, at

18 5. However, defendants present evidence that even when plaintiff was not permitted

19 unsupervised access to writing materials, he was still able to file Kites and grievances because he

20 was either supervised while using writing materials, or correctional deputies completed them on

21 his behalf. Specifically, there is evidence in the form of several observation reports indicating

---

[3] The Court notes that plaintiff does not contend these concerns were unfounded as he acknowledges attempting to harm himself and, in fact, requiring surgery during this period after ingesting foreign objects. Dkt 3, at 5-6.

REPORT AND RECOMMENDATION - 7

1  that plaintiff was checked out a writing instrument under observation. Dkt. 16, at 27-30. There is

2  also evidence that several medical Kites and at least one regular Kite completed during this

3  period were filled out by corrections staff on the plaintiff's behalf. Dkt. 15, at 1; Dkt. 16, at 2, 12.

4  Accordingly, defendants have met their initial burden on this motion of demonstrating by a

5  preponderance of the evidence that administrative remedies were generally available with respect

6  to plaintiff's claims during the time period in question, and that the plaintiff failed to exhaust

7  them.

8        The burden now shifts to Plaintiff, "who must show that there is something particular in his

9  case that made the existing and generally available remedies effectively unavailable to him by

10  'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or

11  obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747

12  F.3d at 1172). Acts by prison officials preventing the exhaustion of administrative remedies may

13  make administrative remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.2d 1217, 1224-

14  25 (9th Cir. 2010). The Supreme Court recently held there are three circumstances in which an

15  administrative remedy is not capable of potential relief:

16
17
18
19
> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

20  *Ross v. Blake,* 136 S. Ct. 1850, 1853–1854 (2016).

21        In his sworn complaint plaintiff alleges he was "not allowed writing material nor allowed

22  a grievance" but later states that the lack of writing materials was only "on and off between

23  9/21/14-April 2015." Dkt. 3, at 2. These conclusory statements fail to raise an issue of fact with

24
25

REPORT AND RECOMMENDATION - 8

respect to defendants' showing that plaintiff was, in fact, able to file Kites and grievances during this period either on his own behalf or, when he did not have access to writing materials, that complaints were filled out by staff on plaintiff's behalf. Plaintiff's complaint further states that "I was told a grievance is a privelage [sic] because I don't have a pencil to write with." Dkt. 3, at 7. However, plaintiff does not explain when or in what context this statement was made nor, to the extent he is alleging he was denied a grievance, does he assert the grievance was related to one of the claims alleged in this case. Plaintiff offers no specific facts in his sworn complaint to demonstrate he was prevented from exercising his administrative remedies with respect to these claims.

In his unsworn responses to defendants' motion and the Court's order, plaintiff contends he has met his PLRA exhaustion requirements as "there were NO available remedies to the plaintiff [because] … I was placed on the severe conditions/restrictions when I hurt myself." Dkt. 28, at 2. Plaintiff also acknowledges for the first time, contradicting the allegations in his complaint, that "there was times I was allowed to file complaints/write letters" but that "the majority of the time my conditions of confinement were too cruel and unusual to do anything." Dkt. 31, at 2. He also asserts that "when I requested a grievance Captain Marvin Spencer told me a grievance is a privelage [sic]; and since I had No pencil it didn't matter." Dkt. 28, at 2. Finally, he alleges he was "denied a grievance", although it is unclear when he is alleging this occurred and whether he is referring to Captain Spencer's alleged response to his request or to something else.[4] *Id.*

---

[4] In his unsworn responses, plaintiff also requests that the Court "have defendants produce copies of my conditions of confinement proving I wasn't given the opportunity to utilize the grievance process." Dkt. 31, at 1. However, defendants have already produced evidence in support of their motion demonstrating that plaintiff did have the opportunity to file Kites and grievances and did in fact utilize the grievance process during the period in question.

REPORT AND RECOMMENDATION - 9

1     Even if the Court could properly consider them, the unsworn, conclusory allegations
2 contained in plaintiff's responses are insufficient to raise a genuine issue of material fact
3 precluding summary judgment. These allegations do not refute the evidence presented by
4 defendants that, during the period that is the subject of plaintiff's complaint, plaintiff did in fact
5 file numerous Kites as well as several grievances and lawsuits unrelated to the claims in his
6 complaint. Plaintiff does not indicate when or the circumstances under which Captain Spencer
7 allegedly stated that a grievance was "a privilege", when or how he was allegedly denied
8 issuance of a grievance, or that the grievance was related to the claims alleged in this case.

9     Furthermore, plaintiff's vague statement that he was able to file some complaints but that
10 "the majority of the time my conditions of confinement were too cruel and unusual to do
11 anything", does not undermine the substantial evidence submitted by defendants that plaintiff
12 had the ability to and did file numerous Kites, several grievances, and two legal claims,
13 throughout much of the period in question. Nor do plaintiff's responses specifically dispute
14 defendants' evidence that even when he was not permitted access to writing instruments that
15 corrections staff would fill out complaints on his behalf. Plaintiff offers no specific facts to
16 indicate that he ever even attempted to exercise his administrative remedies with respect to these
17 claims.

18     In sum, plaintiff has failed to meet his burden to come forward with evidence showing
19 that the administrative remedies were effectively unavailable to him with respect to his claims,
20 and that he was therefore unable to exhaust those remedies. Accordingly, plaintiff has failed to
21 raise a genuine issue of material fact sufficient to preclude summary judgment. Defendants'
22 motion for summary judgment (Dkt. 12) should be granted and the plaintiff's complaint
23 dismissed without prejudice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled*

*on other grounds by Albino*, 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").

Because the Court recommends defendants' motion for summary judgment be granted based on plaintiff's failure to exhaust his administrative remedies, it does not reach the other grounds raised in defendants' motion for summary judgment.

## CONCLUSION

For the above stated reasons, the Court recommends defendants' motion for summary judgment (Dkt. 12) be **GRANTED**, the complaint **DISMISSED WITHOUT PREJUDICE**, and this case be closed.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6; FRCP 72(b). Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating this time limitation, this matter shall be set for consideration on **February 22, 2019**, as noted in the caption.

Dated this 28th day of January, 2019.

Theresa L. Fricke
United States Magistrate Judge